David Abrams, Attorney at Law
305 Broadway Suite 601
New York, New York 10007
Tel. 212-897-5821 Fax 212-897-5811

United States District Court
Eastern District of New York
_____
                                                    )

Ryan Rivera,                               )

                Plaintiff,     )

          - against -     )    Index No.:16cv6301(KAM)(ST)

Limassol Grocery, Corp. a/k/a Gyro Corner, )

                Defendant.   )
_____)

       Plaintiff Rivera, by his attorney, David Abrams, Attorney at Law, respectfully submits this Memorandum of Law in support of his application for default judgment.

## Preliminary Statement

       The facts in this matter show that the Plaintiff was subject to severe sexual harassment in the workplace which persisted despite his repeated complaints to the Defendant's owner. Rather than do anything to remedy the situation, the Defendant (1) submitted demonstrably fraudulent information to the EEOC to have the Plaintiff's EEOC charge dismissed; and (2) fabricated a charge of child molestation against the Plaintiff with the NYPD Special Victims Unit.

       Although initially appearing in and defending this matter, as the evidence of Defendant's extreme misconduct started to emerge, the Defendant reversed course and willfully decided to default. In addition to causing serious emotional suffering to the Plaintiff, Defendant has callously wasted the time and energy of the EEOC, the New

York Police Department, and even this Court with its evasions, diversions, and flagrant lies.

Accordingly, and as set forth in more detail below, Plaintiff seeks a default judgment against the Defendant in the amount of $450,000 (four hundred fifty thousand dollars) representing $150,000 (one hundred fifty thousand dollars) in compensatory damages and $300,000 (three hundred thousand dollars) in punitive damages.

### Facts

This matter is a workplace discrimination claim brought by Plaintiff Ryan Rivera ("Plaintiff" or "Mr. Rivera") against his former employer Limassol Grocery, Corp. a/k/a Gyro Corner ("Defendant" or the "Employer" or "Gyro Corner."). (Amended Complaint, Docket #27, Para. 1-3).

Defendant is a New York corporation which operates a restaurant in Queens, New York. (Amended Complaint Para. 3, 7). Mr. Rivera was employed there as a busboy and phone worker for approximately a year until his job ended in or about July 2016. *(Id.* Para. 8; Rivera Aff. Para. 3). Mr. Rivera is a male homosexual and is perceived to have stereotypically feminine demeanor. (Amended Complaint Para. 9, 10, Rivera Aff. Para. 4).

While employed by the Defendant Mr. Rivera was subject to a hostile work environment based on his perceived sexual orientation and/or the perception that he had stereotypically feminine demeanor. (Amended Complaint Para. 9-10; Rivera Aff. Para. 5). For example, the chefs at work repeatedly addressed Mr. Rivera in a falsetto tone of voice which was obviously an attempt to mock and ridicule him for being a homosexual

and/or for having stereotypically feminine demeanor. (Amended Complaint Para. 11-14; Rivera Aff. Para. 6-9).

Similarly, these same co-workers repeatedly slapped Mr. Rivera on the rear end and pinched his nipples which was done to humiliate and demean him based on these sexual perceptions. (*Id.*) These same co-workers repeatedly requested that he perform oral sex on them in the Employer's basement. (*Id.*) Again, these requests were an obvious attempt (successful) to humiliate and demean him based on his perceived sexual orientation and demeanor. (*Id.*)

These types of events took place on a daily or near daily basis for nearly the entire time Mr. Rivera was employed by the Employer -- approximately the last 10 months. (Rivera Aff. Para. 19). Mr. Rivera has audiovisual recordings of some of these incidents which can be shared with the Court if necessary. (*Id.*)

On numerous occasions, Mr. Rivera complained to the business owner about this conduct. (Rivera Aff. Para. 10; Amended Complaint Para. 15). Although the owner listened to the complaints the above-described harassment continued. (*Id.*) At times it would improve in terms of frequency and intensity but soon thereafter it would resume as before. (Rivera Aff. Para. 10).

This harassment made Mr. Rivera feel demeaned, humiliated and generally uncomfortable on a daily or near-daily basis. (Rivera Aff. Para. 11). Mr. Rivera lost sleep over the situation and was unable to avoid thinking about the harassment while he was outside of work. (Rivera Aff. Para. 11) He ultimately quit his job and moved to California in the summer of 2016. (*Id.*) He has been a citizen, resident, and domiciliary of California ever since then. (*Id.*)

3

In June of 2016 Mr. Rivera retained counsel and filed an EEOC charge against the Employer. (Abrams Aff. Para. 2) In the EEOC charge Mr. Rivera alleged, among other things, that the Employer employed more than 15 persons based on his own observations. (*Id.* Exh. A). While Mr. Rivera was employed by the Employer, its work force included the following 17 persons:

Xeno, Kali Arapas; Xenia Kokkinos; Eirini; Eleni; Ana Gialamboukis; Christina Ionidis; Andreas Dionysiou; Henry; Mohammed Darwish; Torres; Jesus; Manny; Andy; Vasili; Ismael; and Tony. (Rivera Aff. Para 13).

Nevertheless, the Employer misrepresented to the EEOC that it employed fewer than 15 employees. (Abrams Aff. Para. C; Amended Complaint Para. 17-19) This was accomplished by submitting a fraudulent payroll report to the EEOC which evidently omitted individuals who were employed "off the books." For example, Mr. Rivera himself was employed "off the books" and in fact his name does not appear on the payroll report submitted to the EEOC. (*Id.*)

Indeed, Eastern District case number 17-cv-2392 (FB) (SJT) is the matter of *Torres v. Limassol Grocery, Corp.*, a wage/hour claim brought by a former employee of the Defendant. Thus, at the same time that the Defendant in this matter was denying that it had ever employed him, the Defendant was resolving Mr. Torres' FLSA claims in a proceeding in the very same courthouse.

Based on the Employer's fraudulent representations to the EEOC, the EEOC issued a right-to-sue letter without even giving Mr. Rivera a chance to respond. (Abrams Aff. Para. 3, 7; Amended Complaint Para. 21) If given the chance to respond, Mr. Rivera

would have submitted various evidence demonstrating that the Defendant did in fact employ the requisite number of persons.  (Abrams Aff. Para. 7).

In addition to its fraudulent EEOC submission, the Defendant, in response to the EEOC charge, concocted a fraudulent claim of child molestation against Mr. Rivera. (Amended Complaint Para. 23-25).  More specifically, in September of 2016, long after he stopped working for the Defendant and moved to California, Mr. Rivera received a telephone call from Jennifer Lu, an investigator with NYPD special victims unit. (Amended Complaint Para. 23, Rivera Aff. Para. 15).

Investigator Lu advised the Plaintiff that the teenage son of the Employer's owner had filed a criminal complaint against him alleging that he had engaged in sexual misconduct against him.  (Amended Complaint Para. 23, Rivera Aff. Para. 16)

Investigator Lu read Mr. Rivera the details of the charges and they were substantially identical to the contents of his EEOC complaint against the Employer except that Mr. Rivera was described as the harasser and the son was described as the victim.  (Rivera Aff. Para. 17).  Of course the charges against Mr. Rivera were completely false.  (Rivera Aff. Para. 17; Amended Complaint Para. 24).  Moreover, given the timing of the accusation (shortly after the Employer would have learned of the EEOC complaint); the contents of the accusation (substantially the same as the EEOC charge); and the identity of the accuser (the high school age son of the Employer's owner), the reasonable inference is that this was naked attempt to retaliate against Mr. Rivera for filing an EEOC charge.  (Rivera Aff. Para. 18, Amended Complaint Para. 25).

Although he learned shortly thereafter that the NYPD would probably not be pursuing these charges, Mr. Rivera found the entire incident extremely distressing.

Rivera Aff. Para. 19; Amended Complaint Para. 24). He had never been the subject of a criminal investigation for any accusation, let alone something as vile as child molestation. (*Id.*) Even a year later, Mr. Rivera has lingering feelings of anger against his former employer for making this false accusation. (*Id.*)

Plaintiff subsequently filed suit in this Court alleging violations of Federal and local anti-discrimination laws; the Amended Complaint identifies by name more than 15 persons who were employed by the Defendant. (Amended Complaint Para. 27-44). Nevertheless, the Defendant doubled down on its defense regarding the number of employees, seeking leave to move to dismiss on this basis. (Docket Entry #11).

Mr. Rivera sought to take discovery regarding the number of employees and the Defendant resisted and evaded on this issue and ultimately stopped paying its attorneys or participating in this matter despite being warned that this would likely result in a default judgment. (Abrams Aff. Para. 11-16).

The Clerk entered a default in this matter on October 27, 2017 and now Mr. Rivera seeks default judgment. (Abrams Aff. Para. 17).

**Argument**

**I.  The Court Should Enter Default Judgment**

Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure provides that if a party fails to obey an order to participate in discovery, the court may strike pleadings and render a default judgment against the disobedient party. Although a default judgment is an extreme measure, it may be ordered after the court has considered "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-

6

compliant party had been warned of the consequences of noncompliance." *SEC v. Razmilovic*, 738 F.3d 14, 19 (2d Cir. 2013 (citations omitted).

Given the Defendant's conduct, it is clear that the Defendant is unwilling to engage in this litigation and that any lesser sanction than default judgment would merely delay Mr. Rivera's eventual recovery. Accordingly, a default judgment should be entered against Defendant.

## II.     Mr. Rivera Should be Awarded $150,000 in Compensatory Damages

In the Second Circuit, emotional distress damage awards for discrimination typically range from $30,000 to $125,000.  *See  MacMillan v. Millenium Broadway Hotel*, 873 F.Supp.2d 546, 561 (S.D.N.Y. 2012).  As to the sexual harassment claim, the severity of the conduct and its impact on Mr. Rivera, an award close to the upper limit is appropriate.  Accordingly, Mr. Rivera seeks an award of $120,000 in emotional distress damages for the sexual harassment he endured.

As to the retaliation, a more modest award is appropriate given the shorter duration of the incident.  Mr. Rivera seeks $30,000 in emotional distress damages for a total of $150,000.

## III.     Mr. Rivera is Entitled to Maximum Punitive Damages

To receive an award of punitive damages, Mr. Rivera must demonstrate that the circumstances amount to "willful or wanton negligence, or recklessness, or where there is 'a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.'"  *See Chauca v. Abraham*, No. 17 opn 113 (Slip Op. Nov. 20, 2017).

It is clear that the Defendant's conduct meets this standard for at least 3 reasons: Primarily, the Defendant failed to correct the sexual harassment endured by Mr. Rivera

7

despite multiple clear and unambiguous complaints to the Defendant's owner. Thus, the Defendant consciously disregarded Mr. Rivera's right under the NYCHRL to a workplace free of sexual harassment.

Second, in an act of naked and brazen retaliation, the Defendant filed a baseless accusation of child molestation against Mr. Rivera with the New York City Police Department. Indeed, outside of a physical assault, it is difficult to conceive of a more appalling and vicious attack on Mr. Rivera's rights than to file a false accusation of child molestation against him.

Finally, the an attempt to mislead the EEOC is an independent basis for a punitive damages award. *See Lamply v. Onyx Acceptance Corp.*, 340 F.3d 478, 483 (7th Cir. 2003). Here, the evidence shows that the Defendant flat out lied to the EEOC as to the number of employees, thus wasting the time of everyone involved. Mr. Rivera respectfully submits that there need to be consequences for this kind of flagrant misconduct.

 It should be noted that Mr. Rivera is entitled to seek uncapped punitive damages under the New York City Human Rights Law since that law forbids employers from retaliation for "oppos[ing] any practice forbidden under [the New York City Human Rights Law]" New York City Human Rights Law Section 8-107(7)(i). In other words, filing an EEOC charge is itself protected conduct under the New York City Human Rights Law.

In any event, as noted above, the Defendant's failure to properly handle Mr. Rivera's original harassment problem, despite numerous complaints, itself merits an award of punitive damages under the New York City Human Rights Law.

The Second Circuit has endorsed recovery of punitive damages in a 2 to 1 ratio to compensatory damages. See *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140 (2d Cir. 2014).

Accordingly, Mr. Rivera seeks an award of $300,000 in punitive damages.

## Conclusion

For the foregoing reasons, it is respectfully submitted that default judgment be entered against the Defendant in the amount of $450,000. Further, if necessary, Plaintiff respectfully requests leave to supplement this application to cure any deficiencies the Court may find..

                                                        Respectfully submitted,

_____

David Abrams, Attorney at Law
 Attorney for Plaintiff

305 Broadway Suite 601
New York, NY 10007
Tel. 212-897-5821
dnabrams@gmail.com

Dated: New York, NY
       November 27, 2017