David Abrams, Attorney at Law
305 Broadway Suite 601
New York, New York 10007
Tel. 212-897-5821 Fax 212-897-5811

United States District Court
Eastern District of New York
_____

| | | |
|---|---|---|
| Ryan Rivera, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| - against - | ) | No. 16 cv 6301 (KAM) (ST) |
| | ) | |
| Limassol Grocery, Corp. a/k/a Gyro Corner, | ) | |
| | ) | |
| Defendant. | ) | |

_____)

### Affirmation of Plaintiff in Support of Application for Default Judgment

1.      I am the Plaintiff in the above-referenced matter.  I make this affirmation in support of my application for default judgment.

2.      The Defendant in this matter Limassol Grocery, Corp. a/k/a Gyro Corner ("Defendant" or the "Employer" or "Limassol") is a restaurant in Queens, New York.

3.      I was employed by the Defendant as a busboy and phone worker for approximately a year until my job ended in or about July 2016.  I am currently 19 years old.

4.      I am a male homosexual and many people perceive me to have stereotypically feminine demeanor.

5.      As set forth in more detail below, while employed by the Defendant I was subject to a hostile work environment based on my perceived sexual orientation and/or the perception that I had stereotypically feminine demeanor.

6.     For example, the chefs at work repeatedly addressed me in a falsetto tone of voice which was obviously an attempt to mock and ridicule me for being a homosexual and/or for having stereotypically feminine demeanor.

7.     Similarly, these same co-workers repeatedly slapped me on the rear end and pinched my nipples which I understood to be an attempt (successful) to humiliate and demean me based on the sexual perceptions about me.

8.     Similarly, these same co-workers repeatedly requested that I perform oral sex on them in the Employer's basement.  Again, these requests were an obvious attempt (successful) to humiliate and demean me based on my perceived sexual orientation and demeanor.

9.     These types of events took place on a daily or near daily basis for nearly the entire time I was employed by the Employer approximately the last 10 months.  I have audiovisual recordings of some of these incidents which I am happy to share with the Court if necessary so that the Court can see the severity of the behavior.

10.    On numerous occasions, I complained to the business owner, Mr. Dionysiou about this conduct.  Although he listened to my complaints the above-described harassment continued.  At times it would improve in terms of frequency and intensity but soon thereafter it would resume as before.

11.    The above-described harassment made me feel demeaned, humiliated and generally uncomfortable on a daily or near-daily basis.  I lost sleep over the situation and was unable to avoid thinking about the harassment while I was outside of work.  I ultimately quit the job and moved to California in the summer of 2016.  I have been a citizen, resident, and domiciliary of California ever since then.

12.    In June of 2016 I retained my attorney Mr. Abrams and filed an EEOC charge against the Employer.

13.    In my EEOC charge I alleged, among other things, that the Employer employed more than 15 persons.  I know this to be true based on my observations of the workplace. While I was employed by the Employer, its work force included the following 17 persons:

Xeno, Kali Arapas; Xenia Kokkinos; Eirini; Eleni; Ana Gialamboukis; Christina Ionidis; Andreas Dionysiou; Henry; Mohammed Darwish; Torres; Jesus; Manny; Andy; Vasili; Ismael; and Tony.

14.    I myself was employed "off the books," so I know that the Employer's formal payroll is not accurate.

15.    In September of 2016, long after I stopped working for the Defendant and moved to California, I received a telephone call from Jennifer Lu, an investigator with NYPD special victims unit.

16.    Investigator Lu advised me that the teenage son of the Employer's owner had filed a criminal complaint against me alleging that I had engaged in sexual misconduct against him.

17.    Investigator Lu read me the details of the charges and they were substantially identical to the contents of my EEOC complaint against the Employer except that I was described as the harasser and the owner's son was described as the victim.

18.    Of course the charges against me were completely false.  Moreover, given the timing of the accusation (shortly after the Employer would have learned of my EEOC complaint); the contents of the accusation (substantially the same as my EEOC charge); and the identity of the accuser (the high school age son of the Employer's owner), I am very confident that this was a naked attempt to retaliate against me for filing an EEOC charge.

19.     Although I learned shortly thereafter that the NYPD would probably not be

pursuing these charges, I found the entire incident extremely distressing.  I have never

been the subject of a criminal investigation for any accusation, let alone something as vile

as child molestation.  Even a year later, I have lingering feelings of anger against my

former employer for making this false accusation against me.


I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Dated: October 31, 2017
New York, New York

4